# EXHIBIT A

 **Wolters Kluwer**

**CT Corporation**
**Service of Process Notification**
06/26/2023
CT Log Number 544151163

## Service of Process Transmittal Summary

**TO:**   Legal Department
Trinity Health
20555 VICTOR PARKWAY
LIVONIA, MI 48152

**RE:**   **Process Served in Iowa**

**FOR:**   Mercy Health Network, Inc.  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | REBECCA OBERDORF AND MICHAEL PRINS, on behalf of themselves and all others similarly situated vs. TRINITY HEALTH CORPORATION |
| **DOCUMENT(S) SERVED:** | Petition, Notice(s), Attachment(s) |
| **COURT/AGENCY:** | Polk County - District Court, IA<br>Case # CVCV065663 |
| **NATURE OF ACTION:** | Breach of Contract |
| **PROCESS SERVED ON:** | C T Corporation System, Des Moines, IA |
| **DATE/METHOD OF SERVICE:** | By Process Server on 06/26/2023 at 12:03 |
| **JURISDICTION SERVED:** | Iowa |
| **APPEARANCE OR ANSWER DUE:** | Within 20 days after service |
| **ATTORNEY(S)/SENDER(S):** | J. Barton Goplerud<br>SHINDLER ANDERSON GOPLERUD & WEESE PC.<br>5015 Grand Ridge Drive, Suite 100<br>West Des Moines, IA 50265<br>515-223-4567 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 06/27/2023, Expected Purge Date: 07/02/2023<br><br>Image SOP<br><br>Email Notification,  Legal Department  sop@trinity-health.org |
| **REGISTERED AGENT CONTACT:** | C T Corporation System<br>400 East Court Avenue<br>Des Moines, IA 50309<br>866-331-2303<br>CentralTeam1@wolterskluwer.com |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT



**CT Corporation**
**Service of Process Notification**
06/26/2023
CT Log Number 544151163

disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.

 Wolters Kluwer

# PROCESS SERVER DELIVERY DETAILS

**Date:**                          Mon, Jun 26, 2023
**Server Name:**                   Drop Serv

| Entity Served | MERCY HEALTH NETWORK, INC. |
|---------------|----------------------------|
| Case Number   | CVCV065663                 |
| Jurisdiction  | IA                         |

| Inserts | | |
|---------|--|--|
|  |  |  |



## IN THE IOWA DISTRICT COURT FOR POLK COUNTY

| | |
|---|---|
| **REBECCA OBERDORF AND MICHAEL PRINS**, on behalf of themselves and all others similarly situated,<br><br>              Plaintiffs,<br><br>v.<br><br>**TRINITY HEALTH CORPORATION, <u>MERCY HEALTH NETWORK, INC</u>. and MERCY MEDICAL CENTER – CLINTON, INC.,**<br><br>              Defendants. | Case No.<br><br><br>**CLASS ACTION PETITION** |

## <u>CLASS ACTION PETITION</u>

Plaintiffs Rebecca Oberdorf and Michael Prins ("Plaintiffs"), individually and on behalf of all similarly situated persons, allege the following against Trinity Health Corporation, Mercy Health Network, Inc. and Mercy Medical Center – Clinton, Inc. (collectively, "Defendants") based upon personal knowledge with respect to themselves and on information and belief derived from, among other things, investigation by Plaintiffs' counsel and review of public documents as to all other matters:

### I.     INTRODUCTION

1.    Plaintiffs bring this class action against Defendant for its failure to properly secure and safeguard Plaintiffs' and other similarly situated Defendant patients' personally identifiable information ("PII") and protected health information ("PHI"), including name, address, date of birth, driver's license/state identification number, Social Security number, financial account information, medical record number, encounter number, Medicare or Medicaid identification

number, mental or physical treatment/condition information, diagnosis code/information, date of service, admission/discharge date, prescription information, billing/claims information, personal representative or guardian name, and health insurance information (the "Private Information"), from criminal hackers.

2.      Defendant, based in Des Moines, Iowa, is "an integrated system of hospitals, clinics and other health care facilities[,]" with "more than 2,000 physicians and advanced practice clinicians, across 18 medical centers and 23 affiliated organizations with nearly 18,000 colleagues[.]"[1]

3.      On or about June 2, 2023, Defendant sent out data breach notice letters (the "Notice") to individuals whose Private Information was compromised as a result of the hacking incident.

4.      Based on the Notice sent by Defendants, unusual activity was detected on its network that disrupted certain systems and, in response, Defendants launched an investigation which revealed that an unauthorized party had access to certain files that contained sensitive patient information, and that such access took place between March 7, 2023 and April 4, 2023 (the "Data Breach").

5.      Plaintiffs and "Class Members" (defined below) were, and continue to be, at significant risk of identity theft and various other forms of personal, social, and financial harm. The risk will remain for their respective lifetimes.

6.      The Private Information compromised in the Data Breach contained highly sensitive patient data, representing a gold mine for data thieves.

---

[1] *See* https://www.mercyone.org/about-us/ (last visited on June 11, 2023).

7. Armed with the Private Information accessed in the Data Breach (and a head start), data thieves can commit a variety of crimes including, *e.g.*, opening new financial accounts in Class Members' names, taking out loans in Class Members' names, using Class Members' names to obtain medical services, using Class Members' information to obtain government benefits, filing fraudulent tax returns using Class Members' information, obtaining driver's licenses in Class Members' names but with another person's photograph, and giving false information to police during an arrest.

8. There has been no assurance offered by Defendant that all personal data or copies of data have been recovered or destroyed, or that Defendants has adequately enhanced its data security practices sufficient to avoid a similar breach of its network in the future.

9. Therefore, Plaintiffs and Class Members have suffered and are at an imminent, immediate, and continuing increased risk of suffering, ascertainable losses in the form of harm from identity theft and other fraudulent misuse of their Private Information, the loss of the benefit of their bargain, out-of-pocket expenses incurred to remedy or mitigate the effects of the Data Breach, and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach.

10. Plaintiffs bring this class action lawsuit to address Defendant's inadequate safeguarding of Class Members' Private Information that it collected and maintained.

11. The potential for improper disclosure and theft of Plaintiffs' and Class Members' Private Information was a known risk to Defendant, and thus Defendant was on notice that failing to take necessary steps to secure the Private Information left it vulnerable to an attack.

12. Upon information and belief, Defendant and its employees failed to properly implement security practices with regard to the computer network and systems that housed the

3

Private Information. Had Defendant properly monitored its networks, it would have discovered the Data Breach sooner.

13.    Plaintiffs' and Class Members' identities are now at risk because of Defendant's negligent conduct as the Private Information that Defendant collected and maintained is now in the hands of data thieves and other unauthorized third parties.

14.    Plaintiffs seek to remedy these harms on behalf of themselves and all similarly situated individuals whose Private Information was accessed and/or compromised during the Data Breach.

15.    Accordingly, Plaintiffs, on behalf of themselves and the Class, assert claims for negligence, negligence per se, breach of contract, breach of implied contract, unjust enrichment, and breach of confidence.

## II.    **PARTIES**

16.    Plaintiff Rebecca Oberdorf is, and at all times mentioned herein was, an individual citizen of the State of Iowa.

17.    Plaintiff Michael Prins is, and at all times mentioned herein was, an individual citizen of the State of Iowa.

18.    Defendant Trinity Health Corporation ("Trinity Health")is incorporated in Indiana, with its principal place of business located at 20555 Victor Parkway, Suite 100, Livonia, MI 48152-7096, Wayne County.

19.    Defendant MercyOne Health Network, Inc. ("MercyOne") is incorporated in Delaware, with its principal place of business located at 1449 NW 128th Street, Building 5, Suite 200 in Clive, Iowa, Polk County.

20.     Defendant Mercy Medical Center – Clinton, Inc. ("Mercy Clinton") is incorporated in Delaware, with its principal place of business located at 1410 North Fourth Street, Clinton, IA, Clinton County.

## III.     JURISDICTION AND VENUE

21.     This Court has jurisdiction over Defendant because Defendant operates in and/or is incorporated in this District.

22.     Venue is proper in this Court because a substantial part of the events giving rise to this action occurred in this District and Defendant has harmed Class Members residing in this District.

## IV.     FACTUAL ALLEGATIONS

### A. Defendant's Business and Collection of Plaintiffs' and Class Members' Private Information

23.     Trinity Health is among the largest not-for-profit, faith-based health care systems in America. It has 123,000 employees and nearly 27,000 physicians and clinicians across 26 states. Trinity Health includes 88 hospitals, 135 continuing care locations, 136 urgent care locations and many other services. Its annual operating revenue is $21.5 billion.

24.     Mercy Clinton is part of the larger MercyOne healthcare network, based in Des Moines, Iowa, which was recently acquired by Trinity Health. The MercyOne healthcare network is an integrated system of hospitals, clinics and other health care facilities, with more than 2,000 physicians and advanced practice clinicians, across 18 medical centers and 23 affiliated organizations with nearly 18,000 colleagues.

25.     On information and belief, Trinity Health supervises, oversees, manages, and/or implements the data security practices and procedures for the MercyOne healthcare network,

5

which in turn supervises, oversees, manages, and/or implements the data security practices and procedures for Mercy Clinton.

26.     As a condition of receiving health-related services, Defendant requires that its patients entrust it with highly sensitive personal and health information. In the ordinary course of receiving service from Defendant, Plaintiffs and Class Members were required to provide their Private Information to Defendants.

27.     In its HIPAA Policy found on the MercyOne website, Defendant states its commitment to "protecting the privacy of your health information and records[,]" adding that "MercyOne employees will not disclose any of the information contained in your medical records to anyone other than those involved in your care including family caregivers unless you have given us advance written permission."[2]

28.     Notably, all patients receive a "Notice of Privacy Practices" when they check into a Defendant location.[3]

29.     Thus, due to the highly sensitive and personal nature of the information Defendant acquires and stores with respect to its patients, Defendant promises to, among other things: keep patients' Private Information private; comply with industry standards related to data security and the maintenance of its patients' Private Information; inform its patients of its legal duties relating to data security and comply with all federal and state laws protecting patients' Private Information; only use and release patients' Private Information for reasons that relate to the services it provides; and provide adequate notice to patients if their Private Information is disclosed without authorization.

---

[2] *See* https://www.mercyone.org/for-patients/hipaa-policy (last visited June 11, 2023).
[3] *Id.*

30.     By obtaining, collecting, using, and deriving a benefit from Plaintiffs' and Class
Members' Private Information, Defendant assumed legal and equitable duties it owed to them and
knew or should have known that it was responsible for protecting Plaintiffs' and Class Members'
Private Information from unauthorized disclosure and exfiltration.

31.     Plaintiffs and Class Members relied on Defendant to keep their Private Information
confidential and securely maintained and to only make authorized disclosures of this Information,
which Defendants ultimately failed to do.

**B.   *The Data Breach and Defendants' Inadequate Notice to Plaintiffs and Class Members***

32.     According to Defendants' Notice, it learned of unauthorized access to its computer
systems on April 4, 2023, with such unauthorized access having taken place between March 7,
2023 and April 4, 2023.

33.     Through the Data Breach, the unauthorized cybercriminal(s) accessed a cache of
highly sensitive Private Information, including Plaintiffs' and Class Members' Social Security
numbers and PHI.

34.     In or around early June of 2023, Defendant delivered its Notice to Plaintiffs and
Class Members, alerting them that their highly sensitive Private Information had been exposed in
a "recent incident."

35.     The notice letter then listed generic and time-consuming steps that victims of data
security incidents can take, such as getting a copy of a credit report or notifying law enforcement
about suspicious financial account activity. Other than providing limited credit monitoring that
Plaintiffs and Class Members would have to affirmatively sign up for, and a call center number
that victims could contact, Defendant offered no other substantive steps to help victims like

7

Plaintiffs and Class Members to protect themselves. On information and belief, Defendant sent a similar generic letter to all other individuals affected by the Data Breach.

36.     Defendant had obligations created by contract, industry standards, common law, and representations made to Plaintiffs and Class Members to keep Plaintiffs' and Class Members' Private Information confidential and to protect it from unauthorized access and disclosure.

37.     Plaintiffs and Class Members provided their Private Information to Defendant with the reasonable expectation and mutual understanding that Defendant would comply with its obligations to keep such Information confidential and secure from unauthorized access and to provide timely notice of any security breaches.

38.     Defendant's data security obligations were particularly important given the substantial increase in cyberattacks in recent years.

39.     Defendant knew or should have known that its electronic records would be targeted by cybercriminals.

### C.  *The Healthcare Sector is Particularly Susceptible to Data Breaches*

40.     Defendant was on notice that companies in the healthcare industry are susceptible targets for data breaches.

41.     Defendant was also on notice that the FBI has been concerned about data security in the healthcare industry. In August 2014, after a cyberattack on Community Health Systems, Inc., the FBI warned companies within the healthcare industry that hackers were targeting them. The warning stated that "[t]he FBI has observed malicious actors targeting healthcare related

systems, perhaps for the purpose of obtaining the Protected Healthcare Information (PHI) and/or

Personally Identifiable Information (PHI)."[4]

42.    The American Medical Association ("AMA") has also warned healthcare

companies about the importance of protecting their patients' confidential information:

> Cybersecurity is not just a technical issue; it's a patient
> safety issue. AMA research has revealed that 83% of
> physicians work in a practice that has experienced some kind
> of cyberattack. Unfortunately, practices are learning that
> cyberattacks not only threaten the privacy and security of
> patients' health and financial information, but also patient
> access to care.[5]

43.    The healthcare sector reported the second largest number of data breaches among

all measured sectors in 2018, with the highest rate of exposure per breach.[6] In 2022, the largest

growth in compromises occurred in the healthcare sector.[7]

44.    Indeed, when compromised, healthcare related data is among the most sensitive and

personally consequential. A report focusing on healthcare breaches found that the "average total

cost to resolve an identity theft-related incident … came to about $20,000," and that the victims

---

[4] Jim Finkle, *FBI Warns Healthcare Firms that they are Targeted by Hackers*, Reuters (Aug. 2014), *available at* https://www.reuters.com/article/us-cybersecurity-healthcare-fbi/fbi-warns-healthcare-firms-they-are-targeted-by-hackers-idUSKBN0GK24U20140820 (last visited on June 11, 2023).

[5] Andis Robeznieks, *Cybersecurity: Ransomware attacks shut down clinics, hospitals*, Am. Med. Ass'n. (Oct. 4, 2019), *available at*: https://www.ama-assn.org/practice-management/sustainability/cybersecurity-ransomware-attacks-shut-down-clinics-hospitals (last visited on June 11, 2023).

[6] Identity Theft Resource Center, *2018 End-of-Year Data Breach Report, available at*: https://www.idtheftcenter.org/2018-data-breaches/ (last visited on June 11, 2023).

[7] Identity Theft Resource Center, *2022 End-of-Yeare Data Breach Report, available at*: https://www.idtheftcenter.org/wp-content/uploads/2023/01/ITRC_2022-Data-Breach-Report_Final-1.pdf (last visited on June 11, 2023).

were often forced to pay out-of-pocket costs for healthcare they did not receive in order to restore coverage.[8]

45.     Almost 50 percent of the victims lost their healthcare coverage as a result of the incident, while nearly 30 percent said their insurance premiums went up after the event. Forty percent of the customers were never able to resolve their identity theft at all. Data breaches and identity theft have a crippling effect on individuals and detrimentally impact the economy as a whole.[9]

46.     Healthcare related breaches have continued to rapidly increase because electronic patient data is seen as a valuable asset. "Hospitals have emerged as a primary target because they sit on a gold mine of sensitive personally identifiable information for thousands of patients at any given time. From social security and insurance policies, to next of kin and credit cards, no other organization, including credit bureaus, have so much monetizable information stored in their data centers."[10]

47.     As a healthcare provider, Defendant knew, or should have known, the importance of safeguarding its patients' Private Information, including PHI, entrusted to it, and of the foreseeable consequences if such data were to be disclosed. These consequences include the significant costs that would be imposed on Defendant's patients as a result of a breach. Defendant

---

[8] Elinor Mills, *Study: Medical identity theft is costly for victims*, CNET (March 3, 2010), *available at:* https://www.cnet.com/news/privacy/study-medical-identity-theft-is-costly-for-victims/ (last visited on June 11, 2023).

[9] *Id.*

[10] Inside Digital Health, *How to Safeguard Hospital Data from Email Spoofing Attacks*, April 4, 2019, *available at*: https://www.chiefhealthcareexecutive.com/view/how-to-safeguard-hospital-data-from-email-spoofing-attacks (last visited on June 11, 2023).

10

failed, however, to take adequate cybersecurity measures to prevent the Data Breach from occurring.

### D. *Defendant Failed to Comply with HIPAA*

48.     Title II of HIPAA contains what are known as the Administration Simplification provisions. *See* 42 U.S.C. §§ 1301, *et seq*. These provisions require that the Department of Health and Human Services ("HHS") create rules to streamline the standards for handling PHI similar to the data Defendants left unguarded and vulnerable to attack. The HHS has subsequently promulgated five rules under authority of the Administrative Simplification provisions of HIPAA.

49.     Defendant's Data Breach resulted from a combination of insufficiencies that indicate Defendant failed to comply with safeguards mandated by HIPAA regulations and industry standards. First, it can be inferred from Defendant's Data Breach that Defendant either failed to implement, or inadequately implemented, information security policies or procedures to protect Plaintiffs' and Class Members' PHI.

50.     Plaintiffs' and Class Members' Private Information compromised in the Data Breach included "protected health information" as defined by CFR § 160.103.

51.     45 CFR § 164.402 defines "breach" as "the acquisition, access, use, or disclosure of protected health information in a manner not permitted under subpart E of this part which compromises the security or privacy of the protected health information."

52.     45 CFR § 164.402 defines "unsecured protected health information" as "protected health information that is not rendered unusable, unreadable, or indecipherable to unauthorized persons through the use of a technology or methodology specified by the [HHS] Secretary[.]"

53.     Plaintiffs' and Class Members' Private Information included "unsecured protected health information" as defined by 45 CFR § 164.402.

11

54.     Plaintiffs' and Class Members' unsecured PHI was acquired, accessed, used, and/or disclosed in a manner not permitted under 45 CFR, Subpart E, as a result of the Data Breach.

55.     Based upon Defendants' Notice to Plaintiffs and Class Members, Defendant reasonably believes that Plaintiffs' and Class Members' unsecured PHI has been acquired, accessed, used, and/or disclosed in a manner not permitted under 45 CFR, Subpart E, as a result of the Data Breach.

56.     Plaintiffs' and Class Members' unsecured PHI that was acquired, accessed, used, and/or disclosed in a manner not permitted under 45 CFR, Subpart E as a result of the Data Breach was not rendered unusable, unreadable, or indecipherable to unauthorized persons.

57.     Defendant reasonably believes that Plaintiffs' and Class Members' unsecured PHI that was acquired, accessed, used, and/or disclosed in a manner not permitted under 45 CFR, Subpart E as a result of the Data Breach was not rendered unusable, unreadable, or indecipherable to unauthorized persons.

58.     Plaintiffs' and Class Members' unsecured PHI that was acquired, accessed, used, and/or disclosed in a manner not permitted under 45 CFR, Subpart E as a result of the Data Breach, and which was not rendered unusable, unreadable, or indecipherable to unauthorized persons, was viewed by unauthorized persons.

59.     Plaintiffs' and Class Members' unsecured PHI was viewed by unauthorized persons in a manner not permitted under 45 CFR, Subpart E as a result of the Data Breach.

60.     Defendant reasonably believes that Plaintiffs' and Class Members' unsecured PHI was viewed by unauthorized persons in a manner not permitted under 45 CFR, Subpart E as a result of the Data Breach.

61.    It is reasonable to infer that Plaintiffs' and Class Members' unsecured PHI that was acquired, accessed, used, and/or disclosed in a manner not permitted under 45 CFR, Subpart E as a result of the Data Breach, and which was not rendered unusable, unreadable, or indecipherable to unauthorized persons, was viewed by unauthorized persons.

62.    It should be rebuttably presumed that unsecured PHI acquired, accessed, used, and/or disclosed in a manner not permitted under 45 CFR, Subpart E, and which was not rendered unusable, unreadable, or indecipherable to unauthorized persons, was viewed by unauthorized persons.

63.    After receiving notice that they were victims of the Data Breach (which required the filing of a data breach report in accordance with 45 CFR § 164.408(a)), it is reasonable for recipients of that notice, including Plaintiffs and Class Members in this case, to believe that future harm (including medical identity theft) is real and imminent, and to take steps necessary to mitigate that risk of future harm.

64.    In addition, Defendant's Data Breach could have been prevented if Defendant had implemented HIPAA mandated, industry standard policies and procedures for securely disposing of PHI when it was no longer necessary and/or had honored its obligations to its patients.

65.    Defendant's security failures also include, but are not limited to:

a.    Failing to maintain an adequate data security system to prevent data loss;

b.    Failing to mitigate the risks of a data breach and loss of data;

c.    Failing to ensure the confidentiality and integrity of electronic protected health information Defendant creates, receives, maintains, and transmits in violation of 45 CFR 164.306(a)(1);

13

d. Failing to implement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights in violation of 45 CFR 164.312(a)(1);

e. Failing to implement policies and procedures to prevent, detect, contain, and correct security violations in violation of 45 CFR 164.308(a)(1);

f. Failing to identify and respond to suspected or known security incidents;

g. Failing to mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity, in violation of 45 CFR 164.308(a)(6)(ii);

h. Failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic protected health information, in violation of 45 CFR 164.306(a)(2);

i. Failing to protect against any reasonably anticipated uses or disclosures of electronic protected health information that are not permitted under the privacy rules regarding individually identifiable health information, in violation of 45 CFR 164.306(a)(3);

j. Failing to ensure compliance with HIPAA security standard rules by Defendants' workforce, in violation of 45 CFR 164.306(a)(94); and

k. Impermissibly and improperly using and disclosing protected health information that is and remains accessible to unauthorized persons, in violation of 45 CFR 164.502, *et seq.*

66. Because Defendant has failed to comply with HIPAA, while monetary relief may cure some of Plaintiffs' and Class Members' injuries, injunctive relief is also necessary to ensure

14

Defendant's approach to information security is adequate and appropriate going forward. Defendant still maintains the PHI and other highly sensitive PII of its current and former patients, including Plaintiffs and Class Members. Without the supervision of the Court through injunctive relief, Plaintiffs' and Class Members' Private Information remains at risk of subsequent data breaches.

### E. Defendant Failed to Comply with FTC Guidelines

67.    The Federal Trade Commission ("FTC") has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision making. Indeed, the FTC has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. *See, e.g., FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

68.    In October 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established cybersecurity guidelines for businesses. The guidelines note that businesses should protect the personal customer information that they keep, properly dispose of personal information that is no longer needed, encrypt information stored on computer networks, understand their network's vulnerabilities, and implement policies to correct any security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs, monitor all incoming traffic for activity indicating someone is attempting to hack into the system, watch for large amounts of data being transmitted from the system, and have a response plan ready in the event of a breach.

69.     The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction, limit access to sensitive data, require complex passwords to be used on networks, use industry-tested methods for security, monitor the network for suspicious activity, and verify that third-party service providers have implemented reasonable security measures.

70.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data by treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by the FTCA. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

71.     As evidenced by the Data Breach, Defendant failed to properly implement basic data security practices. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiffs' and Class Members' Private Information constitutes an unfair act or practice prohibited by Section 5 of the FTCA.

72.     Defendant was at all times fully aware of its obligation to protect the Private Information of its patients yet failed to comply with such obligations. Defendants was also aware of the significant repercussions that would result from its failure to do so.

**F.  *Defendant Failed to Comply with Industry Standards***

73.     As noted above, experts studying cybersecurity routinely identify businesses as being particularly vulnerable to cyberattacks because of the value of the Private Information which they collect and maintain.

74.     Some industry best practices that should be implemented by businesses dealing with sensitive PHI like Defendant include but are not limited to: educating all employees, strong

password requirements, multilayer security including firewalls, anti-virus and anti-malware software, encryption, multi-factor authentication, backing up data, and limiting which employees can access sensitive data. As evidenced by the Data Breach, Defendants failed to follow some or all of these industry best practices.

75.     Other best cybersecurity practices that are standard in the industry include: installing appropriate malware detection software; monitoring and limiting network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protecting physical security systems; and training staff regarding these points. As evidenced by the Data Breach, Defendants failed to follow these cybersecurity best practices.

76.     Defendants failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

77.     Defendants failed to comply with these accepted standards, thereby permitting the Data Breach to occur.

## G. Defendant Breached its Duty to Safeguard Plaintiffs' and Class Members' Private Information

78.     In addition to its obligations under federal and state laws, Defendant owed a duty to Plaintiffs and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Private Information in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Defendant owed a duty

to Plaintiffs and Class Members to provide reasonable security, including consistency with industry standards and requirements, and to ensure that its computer systems, networks, and protocols adequately protected the Private Information of Class Members

79. Defendant breached its obligations to Plaintiffs and Class Members and/or was otherwise negligent and reckless because it failed to properly maintain and safeguard its computer systems and data. Defendant's unlawful conduct includes, but is not limited to, the following acts and/or omissions:

    a.   Failing to maintain an adequate data security system that would reduce the risk of data breaches and cyberattacks;

    b.   Failing to adequately protect patients' Private Information;

    c.   Failing to properly monitor its own data security systems for existing intrusions;

    d.   Failing to sufficiently train its employees regarding the proper handling of its patients Private Information;

    e.   Failing to fully comply with FTC guidelines for cybersecurity in violation of the FTCA;

    f.   Failing to adhere to HIPAA and industry standards for cybersecurity as discussed above; and

    g.   Otherwise breaching its duties and obligations to protect Plaintiffs' and Class Members' Private Information.

80. Defendant negligently and unlawfully failed to safeguard Plaintiffs' and Class Members' Private Information by allowing cyberthieves to access its computer network and systems which contained unsecured and unencrypted Private Information.

81.     Had Defendant remedied the deficiencies in its information storage and security systems, followed industry guidelines, and adopted security measures recommended by experts in the field, it could have prevented intrusion into its information storage and security systems and, ultimately, the theft of Plaintiffs' and Class Members' confidential Private Information.

82.     Accordingly, Plaintiffs' and Class Members' lives were severely disrupted. What's more, they have been harmed as a result of the Data Breach and now face an increased risk of future harm that includes, but is not limited to, fraud and identity theft. Plaintiffs and Class Members also lost the benefit of the bargain they made with Defendant.

## H. Defendant Should Have Known that Cybercriminals Target PII and PHI to Carry Out Fraud and Identity Theft

83.     The FTC hosted a workshop to discuss "informational injuries," which are injuries that consumers like Plaintiffs and Class Members suffer from privacy and security incidents such as data breaches or unauthorized disclosure of data.[11] Exposure of highly sensitive personal information that a consumer wishes to keep private may cause harm to the consumer, such as the ability to obtain or keep employment. Consumers' loss of trust in e-commerce also deprives them of the benefits provided by the full range of goods and services available which can have negative impacts on daily life.

84.     Any victim of a data breach is exposed to serious ramifications regardless of the nature of the data that was breached. Indeed, the reason why criminals steal information is to monetize it. They do this by selling the spoils of their cyberattacks on the black market to identity

---

[11] *FTC Information Injury Workshop, BE and BCP Staff Perspective,* Federal Trade Commission, (October 2018), *available at* https://www.ftc.gov/system/files/documents/reports/ftc-informational-injury-workshop-be-bcp-staff-perspective/informational_injury_workshop_staff_report_-_oct_2018_0.pdf (last visited on June 11, 2023).

thieves who desire to extort and harass victims or to take over victims' identities in order to engage in illegal financial transactions under the victims' names.

85.     Because a person's identity is akin to a puzzle, the more accurate pieces of data an identity thief obtains about a person, the easier it is for the thief to take on the victim's identity or to otherwise harass or track the victim. For example, armed with just a name and date of birth, a data thief can utilize a hacking technique referred to as "social engineering" to obtain even more information about a victim's identity, such as a person's login credentials or Social Security number. Social engineering is a form of hacking whereby a data thief uses previously acquired information to manipulate individuals into disclosing additional confidential or personal information through means such as spam phone calls and text messages or phishing emails.

86.     In fact, as technology advances, computer programs may scan the Internet with a wider scope to create a mosaic of information that may be used to link compromised information to an individual in ways that were not previously possible. This is known as the "mosaic effect." Names and dates of birth, combined with contact information like telephone numbers and email addresses, are very valuable to hackers and identity thieves as it allows them to access users' other accounts.

87.     Thus, even if certain information was not purportedly involved in the Data Breach, the unauthorized parties could use Plaintiffs' and Class Members' Private Information to access accounts, including, but not limited to, email accounts and financial accounts, to engage in a wide variety of fraudulent activity against Plaintiffs and Class Members.

88.     For these reasons, the FTC recommends that identity theft victims take several time-consuming steps to protect their personal and financial information after a data breach, including contacting one of the credit bureaus to place a fraud alert on their account (and an

E-FILED 2023 JUN 12 5:58 PM POLK - CLERK OF DISTRICT COURT

extended fraud alert that lasts for 7 years if someone steals the victim's identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a freeze on their credit, and correcting their credit reports.[12] However, these steps do not guarantee protection from identity theft but can only mitigate identity theft's long-lasting negative impacts.

89.     Identity thieves can also use stolen personal information such as Social Security numbers and PHI for a variety of crimes, including credit card fraud, phone or utilities fraud, bank fraud, to obtain a driver's license or official identification card in the victim's name but with the thief's picture, to obtain government benefits, or to file a fraudulent tax return using the victim's information. In addition, identity thieves may obtain a job using the victim's Social Security number, rent a house in the victim's name, receive medical services in the victim's name, and even give the victim's personal information to police during an arrest resulting in an arrest warrant being issued in the victim's name.

---

[12] *See IdentityTheft.gov,* Federal Trade Commission, *available at* https://www.identitytheft.gov/Steps (last visited June 11, 2023).

90. In fact, a study by the Identity Theft Resource Center[13] shows the multitude of harms caused by fraudulent use of PII:



91. PHI is also especially valuable to identity thieves. As the FTC recognizes, identity thieves can use PHI to commit an array of crimes, including identity theft and medical and financial fraud.[14]

92. Indeed, a robust cyber black market exists in which criminals openly post stolen PHI on multiple underground Internet websites, commonly referred to as the dark web.

93. While credit card information and associated PII can sell for as little as $1-$2 on the black market, protected health information can sell for as much as $363 according to the Infosec Institute.[15]

---

[13] Steele, Jason, *Credit Card and ID Theft Statistics*, CreditCards.com (October 23, 2017), *available at* https://www.creditcards.com/credit-card-news/credit-card-security-id-theft-fraud-statistics-1276/ (last visited on June 11, 2023).

[14] Federal Trade Commission, *Warning Signs of Identity Theft, available at*: https://consumer.ftc.gov/articles/what-know-about-identity-theft (last visited on June 11, 2023).

[15] Center for Internet Security, *Data Breaches: In the Healthcare Sector, available at*: https://www.cisecurity.org/insights/blog/data-breaches-in-the-healthcare-sector (last visited on June 11, 2023).

94.     PHI is particularly valuable because criminals can use it to target victims with frauds and scams that take advantage of the victim's medical conditions or victim settlements. It can be used to create fake insurance claims, allowing for the purchase and resale of medical equipment, or gain access to prescriptions for illegal use or resale.

95.     Medical identity theft can result in inaccuracies in medical records and costly false claims. It can also have life-threatening consequences. If a victim's health information is mixed with other records, it can lead to misdiagnosis or mistreatment. "Medical identity theft is a growing and dangerous crime that leaves its victims with little to no recourse for recovery," reported Pam Dixon, executive director of World Privacy Forum. "Victims often experience financial repercussions and worse yet, they frequently discover erroneous information has been added to their personal medical files due to the thief's activities."[16]

96.     The ramifications of Defendant's failure to keep its patients' Private Information secure are long lasting and severe. Once it is stolen, fraudulent use of such and damage to victims may continue for years.

97.     Here, not only was sensitive medical information compromised, but financial and health insurance information and Social Security numbers were compromised too. The value of both PII and PHI is axiomatic. The value of "big data" in corporate America is astronomical. The fact that identity thieves attempt to steal identities notwithstanding possible heavy prison sentences illustrates beyond a doubt that the Private Information compromised here has considerable market value.

---

[16] Michael Ollove, "The Rise of Medical Identity Theft in Healthcare," Kaiser Health News, Feb. 7, 2014, *available at*: https://kffhealthnews.org/news/rise-of-indentity-theft/ (last visited on June 11, 2023).

98.     It must also be noted that there may be a substantial time lag between when harm occurs and when it is discovered, and also between when PII and/or PHI is stolen and when it is misused. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:[17]

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

99.     PII and PHI are such valuable commodities to identity thieves that once the information has been compromised, criminals often trade the information on the dark web for years.

100.     As a result, Plaintiffs and Class Members are at an increased risk of fraud and identity theft, including medical identity theft, for many years into the future. Thus, Plaintiffs and Class Members have no choice but to vigilantly monitor their accounts for many years to come.

## I.   *Plaintiffs' and Class Members' Damages*

*Plaintiff Rebecca Oberdorf's Experience*

101.     When Plaintiff Oberdorf became a patient of Defendants, they required that she provide them with substantial amounts of her PII and PHI.

102.     On or around June 2, 2023, Plaintiff Oberdorf received a letter from Defendants informing her that her PII and PHI had been accessed during the Data Breach. The notice letter informed her that the Private Information impacted may have included her "name, address, date of

---

[17] *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, GAO (June 2007), *available at* https://www.gao.gov/assets/270/262904.html (last visited June 11, 2023).

birth, driver's license/state identification number, Social Security number, financial account information, medical record number, encounter number, Medicare or Medicaid identification number, mental or physical treatment/condition information, diagnosis code/information, date of service, admission/discharge date, prescription information, billing/claims information, personal representative or guardian name, and health insurance information

103.    Plaintiff Oberdorf suffered actual injury in the form of time spent dealing with the Data Breach and the increased risk of fraud resulting from the Data Breach and/or monitoring her accounts for fraud.

104.    Plaintiff Oberdorf would not have provided her PII and PHI to Defendants had Defendants timely disclosed that its systems lacked adequate computer and data security practices to safeguard its patients' personal and health information from theft, and that those systems were subject to a data breach.

105.    Plaintiff Oberdorf suffered actual injury in the form of having her PII and PHI compromised and/or stolen as a result of the Data Breach.

106.    Plaintiff Oberdorf suffered actual injury in the form of damages to and diminution in the value of her personal, health, and financial information – a form of intangible property that Plaintiff Oberdorf entrusted to Defendants for the purpose of receiving healthcare services from Defendants and which was compromised in, and as a result of, the Data Breach.

107.    Plaintiff Oberdorf suffered imminent and impending injury arising from the substantially increased risk of future fraud, identity theft, and misuse posed by her Private Information being placed in the hands of criminals.

108.    Plaintiff Oberdorf has a continuing interest in ensuring that her PII and PHI, which remain in the possession of Defendants, are protected and safeguarded from future breaches.

109.     As a result of the Data Breach, Plaintiff Oberdorf made reasonable efforts to mitigate the impact of the Data Breach, including but not limited to researching the Data Breach, reviewing financial accounts for any indications of actual or attempted identity theft or fraud, and researching the credit monitoring offered by Defendants. Plaintiff Oberdorf has spent several hours dealing with the Data Breach, valuable time she otherwise would have spent on other activities.

110.     As a result of the Data Breach, Plaintiff Oberdorf has suffered anxiety as a result of the release of her PII and PHI, which she believed would be protected from unauthorized access and disclosure. These feelings include anxiety about unauthorized parties viewing, selling, and/or using her PII and PHI for purposes of committing cyber and other crimes against her including, but not limited to, fraud and identity theft. Plaintiff Oberdorf is very concerned about this increased, substantial, and continuing risk, as well as the consequences that identity theft and fraud resulting from the Data Breach would have on her life.

111.     Plaintiff Oberdorf also suffered actual injury from having her Private Information compromised as a result of the Data Breach in the form of (a) damage to and diminution in the value of her PII and PHI, a form of property that Defendants obtained from Plaintiff Oberdorf; (b) violation of her privacy rights; and (c) present, imminent, and impending injury arising from the increased risk of identity theft, and fraud she now faces.

112.     As a result of the Data Breach, Plaintiff Oberdorf anticipates spending considerable time and money on an ongoing basis to try to mitigate and address the many harms caused by the Data Breach.

*Plaintiff Michael Prins's Experience*

113.     When Plaintiff Prins became a patient of Defendants, they required that he provide them with substantial amounts of his PII and PHI.

26

114.   On or around June 2, 2023, Plaintiff Prins received a letter from Defendants informing him that his PII and PHI had been accessed during the Data Breach. The notice letter informed him that the Private Information impacted may have included his "name, address, date of birth, driver's license/state identification number, Social Security number, financial account information, medical record number, encounter number, Medicare or Medicaid identification number, mental or physical treatment/condition information, diagnosis code/information, date of service, admission/discharge date, prescription information, billing/claims information, personal representative or guardian name, and health insurance information."

115.   Plaintiff Prins suffered actual injury in the form of time spent dealing with the Data Breach and the increased risk of fraud resulting from the Data Breach and/or monitoring his accounts for fraud.

116.   Plaintiff Prins would not have provided his PII and PHI to Defendants had Defendants timely disclosed that its systems lacked adequate computer and data security practices to safeguard its patients' personal and health information from theft, and that those systems were subject to a data breach.

117.   Plaintiff Prins suffered actual injury in the form of having his PII and PHI compromised and/or stolen as a result of the Data Breach.

118.   Plaintiff Prins suffered actual injury in the form of damages to and diminution in the value of his personal, health, and financial information – a form of intangible property that Plaintiff Prins entrusted to Defendants for the purpose of receiving healthcare services from Defendants and which was compromised in, and as a result of, the Data Breach.

119.     Plaintiff Prins suffered imminent and impending injury arising from the substantially increased risk of future fraud, identity theft, and misuse posed by his Private Information being placed in the hands of criminals.

120.     Plaintiff Prins has a continuing interest in ensuring that his PII and PHI, which remain in the possession of Defendants, are protected and safeguarded from future breaches.

121.     As a result of the Data Breach, Plaintiff Prins made reasonable efforts to mitigate the impact of the Data Breach, including but not limited to researching the Data Breach, reviewing financial accounts for any indications of actual or attempted identity theft or fraud, and researching the credit monitoring offered by Defendants. Plaintiff Prins has spent several hours dealing with the Data Breach, valuable time he otherwise would have spent on other activities.

122.     As a result of the Data Breach, Plaintiff Prins has suffered anxiety as a result of the release of his PII and PHI, which he believed would be protected from unauthorized access and disclosure. These feelings include anxiety about unauthorized parties viewing, selling, and/or using his PII and PHI for purposes of committing cyber and other crimes against him including, but not limited to, fraud and identity theft. Plaintiff Prins is very concerned about this increased, substantial, and continuing risk, as well as the consequences that identity theft and fraud resulting from the Data Breach would have on his life.

123.     Plaintiff Prins also suffered actual injury from having his Private Information compromised as a result of the Data Breach in the form of (a) damage to and diminution in the value of his PII and PHI, a form of property that Defendants obtained from Plaintiff Prins; (b) violation of his privacy rights; and (c) present, imminent, and impending injury arising from the increased risk of identity theft, and fraud he now faces.

124. As a result of the Data Breach, Plaintiff Prins anticipates spending considerable time and money on an ongoing basis to try to mitigate and address the many harms caused by the Data Breach.

125. In sum, Plaintiffs and Class Members have been damaged by the compromise of their Private Information in the Data Breach.

126. Plaintiffs and Class Members entrusted their Private Information to Defendants in order to receive Defendants' services.

127. Their Private Information was subsequently compromised as a direct and proximate result of the Data Breach, which Data Breach resulted from Defendants' inadequate data security practices.

128. As a direct and proximate result of Defendant's actions and omissions, Plaintiffs and Class Members have been harmed and are at an imminent, immediate, and continuing increased risk of harm, including but not limited to, having medical services billed in their names, loans opened in their names, tax returns filed in their names, utility bills opened in their names, credit card accounts opened in their names, and other forms of identity theft.

129. Further, and as set forth above, as a direct and proximate result of Defendants' conduct, Plaintiffs and Class Members have also been forced to take the time and effort to mitigate the actual and potential impact of the data breach on their everyday lives, including placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, and closely reviewing and monitoring bank accounts and credit reports for unauthorized activity for years to come.

130.     Plaintiffs and Class Members may also incur out-of-pocket costs for protective measures such as credit monitoring fees, credit report fees, credit freeze fees, and similar costs directly or indirectly related to the Data Breach.

131.     Plaintiffs and Class Members also face a substantial risk of being targeted in future phishing, data intrusion, and other illegal schemes through the misuse of their Private Information, since potential fraudsters will likely use such Private Information to carry out such targeted schemes against Plaintiffs and Class Members.

132.     The Private Information maintained by and stolen from Defendants' systems, combined with publicly available information, allows nefarious actors to assemble a detailed mosaic of Plaintiffs and Class Members, which can also be used to carry out targeted fraudulent schemes against Plaintiffs and Class Members.

133.     Plaintiffs and Class Members also lost the benefit of the bargain they made with Defendant. Plaintiffs and Class Members overpaid for services that were intended to be accompanied by adequate data security but were not. Indeed, part of the price Plaintiffs and Class Members paid to Defendant (or which was paid on their behalf) was intended to be used by Defendant to fund adequate security of Defendant's system and protect Plaintiffs' and Class Members' Private Information. Thus, Plaintiffs and the Class did not receive the benefit of the bargain.

134.     Additionally, Plaintiffs and Class Members also suffered a loss of value of their PII and PHI when it was acquired by cyber thieves in the Data Breach. Numerous courts have recognized the propriety of loss of value damages in related cases. An active and robust legitimate marketplace for Private Information also exists. In 2019, the data brokering industry was worth

roughly $200 billion.[18] In fact, the data marketplace is so sophisticated that consumers can sell their non-public information directly to a data broker who in turn aggregates the information and provides it to other companies.[19] Consumers who agree to provide their web browsing history to the Nielsen Corporation can in turn receive up to $50 a year.[20]

135.    As a result of the Data Breach, Plaintiffs' and Class Members' Private Information, which has an inherent market value in both legitimate and illegal markets, has been harmed and diminished due to its acquisition by cybercriminals. This transfer of valuable information happened with no consideration paid to Plaintiffs or Class Members for their property, resulting in an economic loss. Moreover, the Private Information is apparently readily available to others, and the rarity of the Private Information has been destroyed because it is no longer only held by Plaintiffs and the Class Members, and because that data no longer necessarily correlates only with activities undertaken by Plaintiffs and the Class Members, thereby causing additional loss of value.

136.    Finally, Plaintiffs and Class Members have suffered or will suffer actual injury as a direct and proximate result of the Data Breach in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach. These losses include, but are not limited to, the following:

        a.  Monitoring for and discovering fraudulent charges;

        b.  Canceling and reissuing credit and debit cards;

        c.  Addressing their inability to withdraw funds linked to compromised accounts;

---

[18] See Data Coup, https://datacoup.com/.

[19] *What is digi.me?, DIGI.ME,* https://digi.me/what-is-digime/ (last visited Jan. 16, 2023).

[20] *Frequently Asked Questions,* Nielsen Computer & Mobile Panel, https://computermobilepanel.nielsen.com/ui/US/en/faqen.html (last visited Jan. 16, 2023).

31

    d.  Taking trips to banks and waiting in line to obtain funds held in limited accounts;

    e.  Spending time on the phone with or at a financial institution to dispute fraudulent charges;

    f.  Contacting financial institutions and closing or modifying financial accounts;

    g.  Resetting automatic billing and payment instructions from compromised credit and debit cards to new ones;

    h.  Paying late fees and declined payment fees imposed as a result of failed automatic payments that were tied to compromised cards that had to be cancelled; and

    i.  Closely reviewing and monitoring bank accounts and credit reports for additional unauthorized activity for years to come.

137.    Moreover, Plaintiffs and Class Members have an interest in ensuring that their Private Information, which is believed to still be in the possession of Defendant, is protected from future breaches by the implementation of more adequate data security measures and safeguards, including but not limited to, ensuring that the storage of data or documents containing highly sensitive personal and health information of its patients is not accessible online, that access to such data is password-protected, and that such data is properly encrypted.

138.    As a direct and proximate result of Defendant's actions and inactions, Plaintiffs and Class Members have suffered a loss of privacy and have suffered cognizable harm, including an imminent and substantial future risk of harm, in the forms set forth above.

## V.    CLASS ACTION ALLEGATIONS

139.     Plaintiffs bring this action individually and on behalf of all other persons similarly situated, pursuant to Iowa R. Civ. P. 1.261, 1.262, and 1.263.

140.     Specifically, Plaintiffs propose the following Class, subject to amendment as appropriate:

> All individuals in the United States who had their Private Information either accessed or acquired as a result of the Data Breach, including all who were sent a notice of the Data Breach.

141.     Excluded from the Class are Defendants and their parents or subsidiaries, any entities in which they have a controlling interest, as well as their officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns. Also excluded is any Judge to whom this case is assigned as well as their judicial staff and immediate family members.

142.     Plaintiffs reserve the right to modify or amend the definitions of the proposed Class before the Court determines whether certification is appropriate.

143.     The proposed Class meets the criteria for certification under Iowa R. Civ. P. 1.263.

144.     <u>Numerosity</u>. The Class Members are so numerous that joinder of all members is impracticable. Though the exact number and identities of Class Members are unknown at this time, based on information and belief, the Class consists of over 20,000 patients of Defendant whose data was compromised in the Data Breach. The identities of Class Members are ascertainable through Defendant's records, Class Members' records, publication notice, self-identification, and other means.

145.     <u>Commonality</u>. There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

> a.   Whether Defendant engaged in the conduct alleged herein;

b. Whether Defendant's conduct violated the FTCA and/or HIPAA;

c. When Defendant learned of the Data Breach

d. Whether Defendant's response to the Data Breach was adequate;

e. Whether Defendant unlawfully lost or disclosed Plaintiffs' and Class Members' Private Information;

f. Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the Private Information compromised in the Data Breach;

g. Whether Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

h. Whether Defendant's data security systems prior to and during the Data Breach were consistent with industry standards;

i. Whether Defendant owed a duty to Class Members to safeguard their Private Information;

j. Whether Defendant breached its duty to Class Members to safeguard their Private Information;

k. Whether hackers obtained Class Members' Private Information via the Data Breach;

l. Whether Defendant had a legal duty to provide timely and accurate notice of the Data Breach to Plaintiffs and the Class Members;

m. Whether Defendant breached its duty to provide timely and accurate notice of the Data Breach to Plaintiffs and Class Members;

n.  Whether Defendant knew or should have known that its data security systems and monitoring processes were deficient;

o.  What damages Plaintiffs and Class Members suffered as a result of Defendant's misconduct;

p.  Whether Defendant's conduct was negligent;

q.  Whether Defendant's conduct was *per se* negligent;

r.  Whether Defendant was unjustly enriched;

s.  Whether Plaintiffs and Class Members are entitled to actual and/or statutory damages;

t.  Whether Plaintiffs and Class Members are entitled to additional credit or identity monitoring and monetary relief; and

u.  Whether Plaintiffs and Class Members are entitled to equitable relief, including injunctive relief, restitution, disgorgement, and/or the establishment of a constructive trust.

146.    Typicality. Plaintiffs' claims are typical of those of other Class Members because Plaintiffs' Private Information, like that of every other Class Member, was compromised in the Data Breach. Plaintiffs' claims are typical of those of the other Class Members because, *inter alia*, all Class Members were injured through the common misconduct of Defendant. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all other Class Members, and there are no defenses that are unique to Plaintiffs. The claims of Plaintiffs and those of Class Members arise from the same operative facts and are based on the same legal theories.

147. <u>Adequacy of Representation</u>. Plaintiffs will fairly and adequately represent and protect the interests of Class Members. Plaintiffs' counsel is competent and experienced in litigating class actions, including data privacy litigation of this kind.

148. <u>Predominance</u>. Defendant has engaged in a common course of conduct toward Plaintiffs and Class Members in that all of Plaintiffs' and Class Members' data was stored on the same computer systems and unlawfully accessed and exfiltrated in the same way. The common issues arising from Defendant's conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

149. <u>Superiority</u>. A Class action is superior to other available methods for the fair and efficient adjudication of this controversy and no unusual difficulties are likely to be encountered in the management of this class action. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a Class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant. In contrast, conducting this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

150. Class certification is also appropriate under Iowa R. Civ. P. 1.262 and 1.263. Defendant has acted and/or refused to act on grounds generally applicable to the Class such that

final injunctive relief and/or corresponding declaratory relief is appropriate as to the Class as a whole.

151.    Finally, all members of the proposed Class are readily ascertainable. Defendant has access to the names and addresses and/or email addresses of Class Members affected by the Data Breach. Class Members have already been preliminarily identified and sent notice of the Data Breach by Defendant.

## CLAIMS FOR RELIEF

### COUNT I
### NEGLIGENCE
### (ON BEHALF OF PLAINTIFFS AND THE CLASS)

152.    Plaintiffs restate and reallege all of the allegations stated above and hereafter as if fully set forth herein.

153.    Defendant knowingly collected, came into possession of, and maintained Plaintiffs' and Class Members' Private Information, and had a duty to exercise reasonable care in safeguarding, securing, and protecting such Information from being disclosed, compromised, lost, stolen, and misused by unauthorized parties.

154.    Defendant knew or should have known of the risks inherent in collecting the Private Information of Plaintiffs and Class Members and the importance of adequate security. Defendant was on notice because, on information and belief, it knew or should have known that it would be an attractive target for cyberattacks.

155.    Defendant owed a duty of care to Plaintiffs and Class Members whose Private Information was entrusted to it. Defendant's duties included, but were not limited to, the following:

        a. To exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting Private Information in its possession;

b. To protect patients' Private Information using reasonable and adequate security procedures and systems compliant with industry standards;

c. To have procedures in place to prevent the loss or unauthorized dissemination of Private Information in its possession;

d. To employ reasonable security measures and otherwise protect the Private Information of Plaintiffs and Class Members pursuant to HIPAA and the FTCA;

e. To implement processes to quickly detect a data breach and to timely act on warnings about data breaches; and

f. To promptly notify Plaintiffs and Class Members of the Data Breach, and to precisely disclose the type(s) of information compromised.

156. Defendant's duty to employ reasonable data security measures arose, in part, under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

157. Defendant's duty also arose because Defendants was bound by industry standards to protect its patients' confidential Private Information.

158. Plaintiffs and Class Members were foreseeable victims of any inadequate security practices on the part of Defendants, and Defendant owed them a duty of care to not subject them to an unreasonable risk of harm.

159. Defendant, through its actions and/or omissions, unlawfully breached its duty to Plaintiffs and Class Members by failing to exercise reasonable care in protecting and safeguarding Plaintiffs' and Class Members' Private Information within Defendant's possession.

160.    Defendant, by its actions and/or omissions, breached its duty of care by failing to provide, or acting with reckless disregard for, fair, reasonable, or adequate computer systems and data security practices to safeguard the Private Information of Plaintiffs and Class Members.

161.    Defendant, by its actions and/or omissions, breached its duty of care by failing to promptly identify the Data Breach and then failing to provide prompt notice of the Data Breach to the persons whose Private Information was compromised.

162.    Defendant breached its duties, and thus was negligent, by failing to use reasonable measures to protect Class Members' Private Information. The specific negligent acts and omissions committed by Defendants include, but are not limited to, the following:

      a.  Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' Private Information;

      b.  Failing to adequately monitor the security of its networks and systems;

      c.  Failing to periodically ensure that its email system maintained reasonable data security safeguards;

      d.  Allowing unauthorized access to Class Members' Private Information;

      e.  Failing to comply with the FTCA; and

      f.  Failing to detect in a timely manner that Class Members' Private Information had been compromised.

163.    Defendant had a special relationship with Plaintiffs and Class Members. Plaintiffs' and Class Members' willingness to entrust Defendant with their Private Information was predicated on the understanding that Defendant would take adequate security precautions. Moreover, only Defendant had the ability to protect its systems (and the Private Information that it stored on them) from attack.

164.     Defendant's breach of duties owed to Plaintiffs and Class Members caused Plaintiffs' and Class Members' Private Information to be compromised, exfiltrated, and/or misused, as alleged herein.

165.     As a result of Defendant's ongoing failure to notify Plaintiffs and Class Members regarding exactly what Private Information has been compromised, Plaintiffs and Class Members have been unable to take the necessary precautions to prevent future fraud and mitigate damages.

166.     Defendant's breaches of duty also caused a substantial, imminent risk to Plaintiffs and Class Members of identity theft, loss of control over their Private Information, and/or loss of time and money to monitor their accounts for fraud.

167.     As a result of Defendant's negligence in breach of its duties owed to Plaintiffs and Class Members, Plaintiffs and Class Members are in danger of imminent harm in that their Private Information, which is still in the possession of third parties, will be used for fraudulent purposes.

168.     Defendant also had independent duties under state laws that required it to reasonably safeguard Plaintiffs' and Class Members' Private Information and promptly notify them about the Data Breach.

169.     As a direct and proximate result of Defendant's negligent conduct, Plaintiffs and Class Members have suffered damages as alleged herein and are at imminent risk of further harm.

170.     The injury and harm that Plaintiffs and Class Members suffered was reasonably foreseeable.

171.     Plaintiffs and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial.

172.     In addition to monetary relief, Plaintiffs and Class Members are also entitled to injunctive relief requiring Defendant to, *inter alia*, strengthen its data security systems and

monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiffs and Class Members.

**COUNT II**
**NEGLIGENCE *PER SE***
**(ON BEHALF OF PLAINTIFFS AND THE CLASS)**

173.    Plaintiffs restate and reallege the allegations in the preceding paragraphs as if fully set forth herein.

174.    Pursuant to Section 5 of the FTCA, Defendant had a duty to provide fair and adequate computer systems and data security to safeguard the Private Information of Plaintiffs and Class Members.

175.    Pursuant to HIPAA, 42 U.S.C. § 1302(d), *et seq*., Defendant had a duty to implement reasonable safeguards to protect Plaintiffs' and Class Members' Private Information.

176.    Specifically, pursuant to HIPAA, Defendants had a duty to render the electronic PHI it maintained unusable, unreadable, or indecipherable to unauthorized individuals by "the use of an algorithmic process to transform data into a form in which there is a low probability of assigning meaning without the use of a confidential process or key." *See* definition of "encryption" at 45 C.F.R. § 164.304.

177.    Defendant breached its duties to Plaintiffs and Class Members under the FTCA and HIPAA by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiffs' and Class Members' Private Information.

178.    Specifically, Defendant breached its duties by failing to employ industry-standard cybersecurity measures in order to comply with the FTCA, including but not limited to proper segregation, access controls, password protection, encryption, intrusion detection, secure destruction of unnecessary data, and penetration testing.

41

179.    The FTCA prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice of failing to use reasonable measures to protect PII and PHI (such as the Private Information compromised in the Data Breach). The FTC rulings and publications described above, together with the industry-standard cybersecurity measures set forth herein, form part of the basis of Defendant's duty in this regard.

180.    Defendant also violated the FTCA and HIPAA by failing to use reasonable measures to protect the Private Information of Plaintiffs and the Class and by not complying with applicable industry standards, as described herein.

181.    It was reasonably foreseeable, particularly given the growing number of data breaches of Private Information, that the failure to reasonably protect and secure Plaintiffs' and Class Members' Private Information in compliance with applicable laws would result in an unauthorized third-party gaining access to Defendant's networks, databases, and computers that stored Plaintiffs' and Class Members' unencrypted Private Information.

182.    Plaintiffs and Class Members are within the class of persons that the FTCA and HIPAA are intended to protect and Defendant's failure to comply with both constitutes negligence *per se*.

183.    Plaintiffs' and Class Members' Private Information constitutes personal property that was stolen due to Defendant's negligence, resulting in harm, injury, and damages to Plaintiffs and Class Members.

184.    As a direct and proximate result of Defendant's negligence *per se*, Plaintiffs and the Class have suffered, and continue to suffer, injuries and damages arising from the unauthorized access of their Private Information, including but not limited to damages from the actual and/or

future risk of misuse of their Private Information and the lost time and effort to mitigate the actual and potential impact of the Data Breach on their lives.

185.    As a direct and proximate result of Defendant's negligent conduct, Plaintiffs and Class Members have suffered injury and are entitled to compensatory and consequential damages in an amount to be proven at trial.

186.    In addition to monetary relief, Plaintiffs and Class Members are also entitled to injunctive relief requiring Defendant to, *inter alia*, strengthen its data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiffs and Class Members.

## COUNT III
## BREACH OF CONTRACT
## (ON BEHALF OF PLAINTIFFS AND THE CLASS)

187.    Plaintiffs restate and reallege the allegations in paragraphs        as if fully set forth herein.

188.    Plaintiffs and Class Members entered into a valid and enforceable contract through which they paid money to Defendant in exchange for services. That contract included promises by Defendants to secure, safeguard, and not disclose Plaintiffs' and Class Members' Private Information.

189.    Defendant's Privacy Policy memorialized the rights and obligations of Defendant and its patients. This document was provided to Plaintiffs and Class Members in a manner in which it became part of the agreement for services.

190.    In the Privacy Policy, Defendant commits to protecting the privacy and security of private information and promises to never share Plaintiffs' and Class Members' Private Information except under certain limited circumstances.

191.    Plaintiffs and Class Members fully performed their obligations under their contracts with Defendant.

192.    However, Defendant did not secure, safeguard, and/or keep private Plaintiffs' and Class Members' Private Information, and therefore Defendant breached its contracts with Plaintiffs and Class Members.

193.    Defendant allowed third parties to access, copy, and/or exfiltrate Plaintiffs' and Class Members' Private Information without permission. Therefore, Defendant breached the Privacy Policy with Plaintiffs and Class Members.

194.    Defendant's failure to satisfy its confidentiality and privacy obligations, specifically those arising under the FTCA, HIPAA, and applicable industry standards, resulted in Defendant providing services to Plaintiffs and Class Members that were of a diminished value.

195.    As a result, Plaintiffs and Class Members have been harmed, damaged, and/or injured as described herein, including in Defendants' failure to fully perform its part of the bargain with Plaintiffs and Class Members.

196.    As a direct and proximate result of Defendant's conduct, Plaintiffs and Class Members suffered and will continue to suffer damages in an amount to be proven at trial.

197.    In addition to monetary relief, Plaintiffs and Class Members are also entitled to injunctive relief requiring Defendant to, *inter alia*, strengthen its data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiffs and Class Members.

## COUNT IV
## BREACH OF IMPLIED CONTRACT
## (ON BEHALF OF PLAINTIFFS AND THE CLASS)

44

198.     Plaintiffs restate and reallege the allegations in paragraphs          as if fully set forth herein.

199.     This Count is pleaded in the alternative to Count III above.

200.     Defendant provides medical services to Plaintiffs and Class Members. Plaintiffs and Class Members formed an implied contract with Defendants regarding the provision of those services through their collective conduct, including by Plaintiffs and Class Members (or their insurance) paying to receive such services from Defendants.

201.     Through Defendants' sale and provision of medical services, it knew or should have known that it must protect Plaintiffs' and Class Members' confidential Private Information in accordance with Defendant's policies, practices, and applicable law.

202.     As consideration, Plaintiffs and Class Members paid money to Defendant and turned over valuable Private Information to Defendant. Accordingly, Plaintiffs and Class Members bargained with Defendant to securely maintain and store their Private Information.

203.     Defendant accepted possession of Plaintiffs' and Class Members' Private Information for the purpose of providing services to Plaintiffs and Class Members.

204.     In delivering their Private Information to Defendant and paying to receive medical services, Plaintiffs and Class Members intended and understood that Defendant would adequately safeguard the Private Information as part of those services.

205.     Defendants' implied promises to Plaintiffs and Class Members include, but are not limited to, (1) taking steps to ensure that anyone who is granted access to Private Information also protect the confidentiality of that data; (2) taking steps to ensure that the Private Information that is placed in the control of its employees is restricted and limited to achieve an authorized business purpose; (3) restricting access to qualified and trained employees and/or agents; (4) designing and

45

implementing appropriate retention policies to protect the Private Information against criminal data breaches; (5) applying or requiring proper encryption; (6) implementing multifactor authentication for access; (7) complying with HIPAA standards to make sure that Plaintiffs' and Class Members' PHI would remain protected; and (8) taking other steps to protect against foreseeable data breaches.

206.    Plaintiffs and Class Members would not have entrusted their Private Information to Defendant in the absence of such an implied contract.

207.    Had Defendants disclosed to Plaintiffs and the Class that they did not have adequate computer systems and security practices to secure sensitive data, Plaintiffs and Class Members would not have provided their Private Information to Defendant.

208.    As a provider of healthcare, Defendant recognized (or should have recognized) that Plaintiffs' and Class Member's Private Information is highly sensitive and must be protected, and that this protection was of material importance as part of the bargain with Plaintiffs and the other Class Members.

209.    Defendant violated these implied contracts by failing to employ reasonable and adequate security measures to secure Plaintiffs' and Class Members' Private Information. Defendant further breached these implied contracts by failing to comply with its promise to abide by HIPAA.

210.    Additionally, Defendant breached the implied contracts with Plaintiffs and Class Members by failing to ensure the confidentiality and integrity of electronic protected health information it created, received, maintained, and transmitted, in violation of 45 CFR 164.306(a)(1).

211.    Defendant also breached the implied contracts with Plaintiffs and Class Members by failing to implement technical policies and procedures for electronic systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights, in violation of 45 CFR 164.312(a)(1).

212.    Defendant further breached the implied contracts with Plaintiffs and Class Members by failing to implement policies and procedures to prevent, detect, contain, and correct security violations, in violation of 45 CFR 164.308(a)(1).

213.    Defendant further breached the implied contracts with Plaintiffs and Class Members by failing to identify and respond to suspected or known security incidents; mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity, in violation of 45 CFR 164.308(a)(6)(ii).

214.    Defendant further breached the implied contracts with Plaintiffs and Class Members by failing to protect against any reasonably anticipated threats or hazards to the security or integrity of electronic protected health information, in violation of 45 CFR 164.306(a)(2).

215.    Defendant further breached the implied contracts with Plaintiffs and Class Members by failing to protect against any reasonably anticipated uses or disclosures of electronic protected health information that are not permitted under the privacy rules regarding individually identifiable health information, in violation of 45 CFR 164.306(a)(3).

216.    Defendant further breached the implied contracts with Plaintiffs and Class Members by failing to ensure compliance with the HIPAA security standard rules by its workforce violations, in violation of 45 CFR 164.306(a)(94).

217. Defendant further breached the implied contracts with Plaintiffs and Class Members by impermissibly and improperly using and disclosing protected health information that is and remains accessible to unauthorized persons, in violation of 45 CFR 164.502, *et seq.*

218. Defendant further breached the implied contracts with Plaintiffs and Class Members by failing to design, implement, and enforce policies and procedures establishing physical administrative safeguards to reasonably safeguard protected health information, in violation of 45 CFR 164.530(c).

219. Defendant further breached the implied contracts with Plaintiffs and Class Members by otherwise failing to safeguard Plaintiffs' and Class Members' PHI.

220. A meeting of the minds occurred, as Plaintiffs and Class Members agreed, *inter alia*, to provide accurate and complete Private Information and to pay (or have their insurance pay) Defendant in exchange for Defendant's agreement to, *inter alia*, protect their Private Information.

221. Plaintiffs and Class Members have been damaged by Defendant's conduct, including the harms and injuries arising from the Data Breach now and in the future, as alleged herein.

### COUNT V
### UNJUST ENRICHMENT
### (ON BEHALF OF PLAINTIFFS AND THE CLASS)

222. Plaintiffs restate and reallege the allegations in the preceding paragraphs as if fully set forth herein.

223. This Count is pleaded in the alternative to Counts III and IV above.

224. Plaintiffs and Class Members conferred a benefit on Defendant by turning over their Private Information to Defendants and/or by paying for services that should have included

cybersecurity protection to protect their Private Information. Plaintiffs and Class Members did not receive such protection.

226. Upon information and belief, Defendant funds its data security measures entirely from its general revenue, including from payments made to it by Plaintiffs and Class Members and/or on Plaintiffss' and Class Members' behalf.

226. As such, a portion of the payments made by Plaintiffs and Class Members or on their behalf is to be used to provide a reasonable and adequate level of data security that is in compliance with applicable state and federal regulations and industry standards, and the amount of the portion of each payment made that is allocated to data security is known to Defendant.

227. Defendant has retained the benefits of its unlawful conduct, including the amounts of payment received from Plaintiffs and Class Members or their health insurers that should have been used for adequate cybersecurity practices that it failed to provide.

228. Defendant knew that Plaintiffs and Class Members conferred a benefit upon it, which Defendant accepted. Defendant profited from these transactions and used the Private Information of Plaintiffs and Class Members for business purposes, while failing to use the payments it received for adequate data security measures that would have secured Plaintiffs' and Class Members' Private Information and prevented the Data Breach.

229. If Plaintiffs and Class Members had known that Defendant had not adequately secured their Private Information, they would not have agreed to provide such Private Information to Defendants.

230. Due to Defendant's conduct alleged herein, it would be unjust and inequitable under the circumstances for Defendant to be permitted to retain the benefit of its wrongful conduct.

231.   As a direct and proximate result of Defendant's conduct, Plaintiffs and Class Members have suffered and/or are at a continuous and imminent risk of suffering injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity to control how their Private Information is used; (iii) the compromise, publication, and/or theft of their Private Information; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their Private Information; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (vi) the continued risk to their Private Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect Private Information in its continued possession; and (vii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Private Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiffs and Class Members.

232.   Plaintiffs and Class Members are entitled to full refunds, restitution, and/or damages from Defendant and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Defendant from its wrongful conduct. This can be accomplished by establishing a constructive trust from which the Plaintiffs and Class Members may seek restitution or compensation.

233.   Plaintiffs and Class Members may not have an adequate remedy at law against Defendant, and accordingly, they plead this claim for unjust enrichment in addition to, or in the alternative to, other claims pleaded herein.

## COUNT VI
## BREACH OF CONFIDENCE
## (ON BEHALF OF PLAINTIFFS AND THE NATIONWIDE CLASS OR
## ALTERNATIVELY THE        AND        SUBCLASS)

234.    Plaintiffs restate and reallege the allegations in paragraphs        as if fully set forth herein.

235.    `Plaintiffs and Class Members have an interest, both equitable and legal, in the Private Information about them that was conveyed to, collected by, and maintained by Defendant and ultimately accessed and acquired in the Data Breach.

236.    As a healthcare provider, Defendant has a special, fiduciary relationship with its patients, including Plaintiffs and Class Members. Because of that special relationship, Defendant was provided with and stored Plaintiffs' and Class Members' Private Information and had a duty to maintain such Information in confidence.

237.    Patients like Plaintiffs and Class Members have a privacy interest in personal medical and other matters, and Defendant had a duty not to disclose such matters concerning its patients.

238.    As a result of the parties' relationship, Defendant had possession and knowledge of highly sensitive and confidential PHI and PII belonging to Plaintiffs and Class Members, information that was not generally known.

239.    Plaintiffs and Class Members did not consent nor authorize Defendants to release or disclose their Private Information to an unknown criminal actor.

240.    Defendant breached its duty of confidence owed to Plaintiffs and Class Members by, among other things: (a) mismanaging its system and failing to identify reasonably foreseeable internal and external risks to the security, confidentiality, and integrity of patient information that resulted in the unauthorized access and compromise of Plaintiffs' and Class Members' Private

Information; (b) mishandling its data security by failing to assess the sufficiency of its safeguards in place to control these risks; (c) failing to design and implement adequate information safeguards to control these risks; (d) failing to adequately test and monitor the effectiveness of the safeguards' key controls, systems, and procedures; (e) failing to evaluate and adjust its information security program in light of the circumstances alleged herein; (f) failing to detect the Breach at the time it began or within a reasonable time thereafter; (g) failing to follow its own privacy policies and practices published to its patients; and (h) making an unauthorized and unjustified disclosure and release of Plaintiffs' and Class members' Private Information to a criminal third party.

241. But for Defendant's wrongful breach of its duty of confidence owed to Plaintiffs and Class Members, their Private Information would not have been compromised.

242. As a direct and proximate result of Defendant's wrongful breach of its duty of confidence, Plaintiffs and Class Members have suffered and will continue to suffer the injuries alleged herein.

243. It would be inequitable for Defendant to retain the benefit of controlling and maintaining Plaintiffs' and Class Members' Private Information at the expense of Plaintiffs and Class Members.

244. Plaintiffs and Class Members are entitled to damages, including compensatory, punitive, and/or nominal damages, and/or disgorgement or restitution, in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the Class described above, seek the following relief:

a. An order certifying this action as a Class action under Iowa R. Civ. P. 1.262, defining the Class as requested herein, appointing the undersigned as Class counsel, and finding that Plaintiffs are proper representatives of the Class requested herein;

b. Judgment in favor of Plaintiffs and Class Members awarding them appropriate monetary relief, including actual damages, statutory damages, equitable relief, restitution, disgorgement, and statutory costs;

c. An order providing injunctive and other equitable relief as necessary to protect the interests of the Class as requested herein, including but not limited to, the following measures:

1. engaging third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

2. engaging third-party security auditors and internal personnel to run automated security monitoring;

3. auditing, testing, and training its security personnel regarding any new or modified procedures;

4. segmenting its user applications by, among other things, creating firewalls and access controls so that if one area is compromised, hackers cannot gain access to other portions of Defendant's systems;

5. conducting regular database scanning and security checks;

E-FILED 2023 JUN 12 5:58 PM POLK - CLERK OF DISTRICT COURT

6. routinely and continually conducting internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and

7. meaningfully educating its users about the threats they face with regard to the security of their Private Information, as well as the steps Defendant's patients should take to protect themselves.

d. An order instructing Defendant to purchase or provide funds for lifetime credit monitoring and identity theft insurance to Plaintiffs and Class Members;

e. An order requiring Defendant to pay the costs involved in notifying Class Members about the judgment and administering the claims process;

f. A judgment in favor of Plaintiffs and Class Members awarding them prejudgment and post-judgment interest, reasonable attorneys' fees, costs, and expenses as allowable by law; and

g. An award of such other and further relief as this Court may deem just and proper.

### DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all triable issues.

54

DATED: June 12, 2023                    Respectfully submitted,


                                        /s/ J. Barton Goplerud
                                        J. Barton Goplerud, AT0002983
                                        Brian O. Marty, AT0011622
                                        SHINDLER ANDERSON GOPLERUD &
                                        WEESE P.C.
                                        5015 Grand Ridge Drive, Suite 100
                                        West Des Moines, Iowa 50265-5749
                                        Telephone:     (515) 223-4567
                                        Facsimile:     (515) 223-8887
                                        Email: goplerud@sagwlaw.com
                                               marty@sagwlaw.com


                                        **SIRI & GLIMSTAD LLP**
                                        Mason A. Barney (*pro hac vice* to be filed)
                                        Tyler J. Bean (*pro hac vice* to be filed)
                                        745 Fifth Avenue, Suite 500
                                        New York, New York 10151
                                        Tel: (212) 532-1091
                                        E: mbarney@sirillp.com
                                        E: tbean@sirillp.com

## IN THE IOWA DISTRICT COURT FOR POLK COUNTY

| | |
|---|---|
| **REBECCA OBERDORF AND MICHAEL PRINS**, on behalf of themselves and all others similarly situated,<br><br>,<br><br>       Plaintiff,<br><br>vs.<br><br>**TRINITY HEALTH CORPORATION, MERCY HEALTH NETWORK, INC. and MERCY MEDICAL CENTER – CLINTON, INC.,**<br><br>       Defendant. | CASE NO.<br><br><br>ORIGINAL NOTICE |

**TO THE ABOVE-NAMED DEFENDANT:**

You are hereby notified that there is now on file in the office of the Clerk of the above court a Petition in the above-entitled action, a copy of which is attached hereto (along with copies of any documents filed with it). The Plaintiff's attorneys are J. Barton Goplerud and Brian Marty of the law firm of Shindler, Anderson, Goplerud & Weese, P.C., whose address is 5015 Grand Ridge Drive #100, West Des Moines, Iowa 50265, whose phone number is 515-223-4567, and whose fax number is 515-223-888.

Iowa is a state which utilizes electronic filing in all counties. General rules and information on electronic filing are contained Iowa Court Rules Chapter 16. Information regarding requirements related to the protection of personal information in court filings is contained in Iowa Court Rules Chapter 16, Division VI. You must serve a motion or answer within 20 days after service of this Original Notice upon you by using the Iowa Judicial Branch Electronic Document Management System (EDMS) at www.iowacourts.state.ia.us/efile, unless you obtain from the court an exemption from electronic filing requirements. If you do not file your appearance, motion to answer within 20 days from the date you are served with this Original Notice, judgment by default will be rendered against you for the relief demanded in the Petition.

                    CLERK OF COURT
                    Polk County Courthouse
                    110 6th Ave
                    Des Moines, Iowa 50309

*NOTE: The attorney who is expected to represent the Defendant(s) should be promptly advised by Defendant(s) of this Original Notice.*

1

*If you require the assistance of auxiliary aids or services to participate in court because of a disability, immediately call your District ADA Coordinator at 319-398-3920. (If you are hearing impaired, call Relay Iowa TTY at 1-800-735-2942).*

# Iowa Judicial Branch

| | |
|---|---|
| *Case No.* | **CVCV065663** |
| *County* | **Polk** |

*Case Title*  OBERDORF ET AL VS TRINITY HEALTH CORPORATIONS ET A

You must file your Appearance and Answer on the Iowa Judicial Branch eFile System, unless the attached Petition and Original Notice contains a hearing date for your appearance, or unless the court has excused you from filing electronically (*see* Iowa Court Rule 16.302).

Register for the eFile System at www.iowacourts.state.ia.us/Efile to file and view documents in your case and to receive notices from the court.

For general rules and information on electronic filing, refer to the Iowa Rules of Electronic Procedure in chapter 16 of the Iowa Court Rules at www.legis.iowa.gov/docs/ACO/CourtRulesChapter/16.pdf.

Court filings are public documents and may contain personal information that should always be kept confidential. For the rules on protecting personal information, refer to Division VI of chapter 16 of the Iowa Court Rules and to the Iowa Judicial Branch website at www.iowacourts.gov/for-the-public/representing-yourself/protect-personal-information/.

*Scheduled Hearing:*

If you need assistance to participate in court due to a disability, call the disability access coordinator at **(515) 286-3394** . Persons who are hearing or speech impaired may call Relay Iowa TTY (1-800-735-2942). For more information, see www.iowacourts.gov/for-the-public/ada/. **Disability access coordinators cannot provide legal advice.**

*Date Issued* **06/13/2023 10:55:34 AM**



*District Clerk of Court or/by Clerk's Designee of* Polk            *County*
**/s/ Jeremy Alvarez**